Your Honors, my name is Karen Denise Lee, and I am here on behalf of MGA Entertainment, Inc., the appellant in this matter. Prior to our being here today, you sent an order requesting us to focus on a particular issue, and let me do that at this time. Your inquiry was, does the September 14, 2010 order issued by Judge Klausner have a preclusion effect on this matter? Our position is, no, it does not. And I would assume that you would expect that to be our position. The order does not have a preclusion effect because it is not a final adjudication. Under Rule 41B, dismissal for lack of jurisdiction is not a final adjudication unless the order issued specifically says so. Not only does Judge Klausner's order not say so, it is issued without prejudice, which, in fact, invites the parties to try again, come back, I'm not done with you. The question I'm about to ask you, I use the word facts or evidence as loosely as possible. What facts or evidence were in the mix when Judge Klausner said what he did about jurisdictions that are present in this case? You'll have to indulge me. I was not counsel at that time, so I'm trying to run through my recent review. So to put it in colloquial terms, Judge Klausner looked at the jurisdictional facts that were before him at that time and said, I don't think there's jurisdiction here. What, in addition to that quantum of facts, is present here? I read Judge Klausner's order a little bit differently. I read it as saying, you need to do a better job of showing me that there's jurisdiction. Okay. Did you in this case? I think that there are better allegations. I'm not saying this is the most artfully prepared complaint. It certainly will not win any awards, but I do believe that when you read the four corners of the complaint, the allegations are there. There are allegations that IFI did avail itself purposely of the laws and the benefits of being in California. There are also allegations this time around that were not present the first time around regarding. Okay. They formed this California corporation called IP Defenders. That is true. That's part of the allegation. That is part of the allegations. And they sent out some press releases. They sent out some press releases specifically addressed to MGA. This time around, we also more particularly alleged that MGA does do its business in California. Doesn't our law require that for the purpose, and I think we're talking about specific jurisdiction here, doesn't it require that your claim, that the claim arise out of the jurisdictional facts? And yes. And that is what we are saying. We are saying, look, MGA is a California-based corporation. We do our business here. Our retailers are here. Our distributors are here. You, IFI and IP Defenders, came into California. You interfered with our retailers, with those relationships, with our dealings with distributors, through partly talking to them, intimidating them, through press releases, telling them, if you sell these products, we are going to sue you. We are going to hold you liable. Therefore, making them understandably uncomfortable dealing with MGA, uncomfortable selling our products here in California. This time around, there is more specificity about what IFI did within the borders of California to harm a California residence, impede a California business. Now, the parties are engaged in at least similar litigation in Texas, correct? Actually, the litigation in Texas is now done. I thought it went on appeal. No, no appeal to my we just checked on that, and we have no record of the case. What do you mean by done? The court ruled in favor of MGA and dismissed the action against IP, filed by IP Defenders. And this was on which claims? Was it the State claims or the Federal claims? I believe it was on the Federal claims in Texas. Is that in the record? It's not in the record because it only happened recently. It happened after all the briefs and everything were filed. Isn't that kind of pertinent to the claims you're trying to raise here? Well, I only received, I want to say last Thursday or Friday, was I able to get confirmation that the date and time for IP Defenders to appeal that action has actually expired. Because in Texas they have a different way of looking at it. You can, you have a certain period of time to actually file a notice of appeal with a court of appeals. If you miss that date, then you need to file a notice of appeal with a local court, explain why you messed up, and then you may get a chance to file. We needed to find out whether or not, one, they had filed the notice, they didn't. But it's in Federal court, right? Actually, there is an action. Can I just check for a second? No, there is, I'm sorry. I'm referring to the Texas State Court action. Okay. But there is another Federal court action. I am not aware of another Federal court action in Texas. Okay. We can also ask that question of your counsel. When, can you give us a time approximation of when the Texas action ended? Not the appeal period, but when, I assume, final judgment of some kind was entered? Final judgment, I believe, was entered in November. Of what year? 2012. So. And what did you find out? I found out, I've only been employed with MGA for about 30 days. So I found out and was able to confirm that, indeed, that is the final judgment. We received the written judgment that it is. It's not me. It was not me. And when did you receive that? I believe we received it the first part of December. And I received complaint that said we needed to make sure that all the time had expired for IP defenders to file its appeal, and it has. You're aware of our Rule 28J, aren't you? Yes. Okay. Is there any reason you didn't supplement the record with that? Because, like I said, I just became employed with MGA Entertainment, and this just became my responsibility recently. Are you an employee of MGA in-house counsel? Yes, I am in-house counsel for MGA. Okay. And this just recently became my file. So I apologize, Your Honor. The reason I think, at least for me, we're asking about this is it occurred to me that part of the reason for the dismissal in district court was that there was a pending similar action in Texas. So I would have thought it would have been much to your benefit to advise the Court about that. And I don't disagree, Your Honor. And I do think that not only should this Court have been made aware of it, but perhaps we should have tried to pursue what other avenues may have been available to us on it. So who was the counsel before you got this file? Mr. Craig-Colvin from Lewis-Brisbois. Okay. Do you have anything else you want to add, or you want to save your time in the rebuttal? I'll save my time. You won't lose your time there. Your Honors, may it please the Court, my name is Kelly Heine, and I represent the Appalese in this case.  Turnabout is fair play. When did you find out about the finality of the Texas? I found out about it when it happened, Your Honor. And we have not had an opportunity to supplement that. I would be happy to submit that to you if you'd like. The dismissal in the Texas State court or, sorry, the Texas Federal court occurred, I want to say, in early November. It is now final. The dismissal was in Federal court. It was in Federal court. In the United States district court for the United States district court. Can I finish my question? Oh, I'm sorry. In the United States district court for the Northern district of Texas? Yes, Your Honor. Judge Solis. Okay. And there's a final judgment that was entered? There is a final judgment that was entered. And it was in favor of MGA? It was. It dismissed the claims that had been brought by IP defenders for lack of standing. The Court found that the claims that IP defenders had brought that purported to be under Texas State law actually stated a Federal copyright claim. But IP defenders only had an assignment, a very limited assignment, of Texas State law rights and, therefore, did not have standing to pursue the copyright claims that the Court interpreted as having been brought. Am I correct in assuming that part of the reason the district court in this action dismissed the action was because of the presence of the Texas litigation? In fact, Your Honor, the district court in this case. Can you start with a yes or no? No, Your Honor. Please explain. In fact, the district court in this matter, in this second lawsuit that MGA brought, declined to rule on the motion to transfer that had been based on the pendency of IP defenders. The purpose of my question was the court dismissed, saying it thought it lacked jurisdiction, either general or specific jurisdiction, was part of the reason that made the district court in this case comfortable with that conclusion was the presence of similar litigation ongoing in Texas. Not as I read the Court's opinion, Your Honor. Okay. All right. Your Honors, have asked us to address the preclusive effect of the present action. And, Your Honor, we do believe that the earlier order that had been entered by Judge Klausner is preclusive on the jurisdictional issues that are presented in this case. As this Court recognized in Kendall v. Overseas Development Corporation, 700 F. 2nd, 536, quote, It is well settled that the principles of res judicata apply to the issue of in personam jurisdiction. To an order issued that says without prejudice? Well, Your Honor, let's look and see exactly what Judge Klausner's order says. Do you have a case that says if a judge enters an order at time period A that says without prejudice, that's entitled to res judicata effect? Yes, Your Honor. While the dismissal for lack of personam jurisdiction. A question asked for a case. I would cite the court to Gupta v. Thai Airways International Limited, Your Honor. Okay. And is that in your brief? That's in your brief? It is not. It is in response to the question that the court asked us to address today. Okay. While the Gupta case. What's the date of that case? The Gupta case was from 2007, Your Honor. It's reported at 487 F. 3rd, 759. Is that one of ours? That's a Ninth Circuit case. Although I don't believe that it is absolutely directly on point to your question, I believe that it's. It's the best you could find. It's the best I can find. And what that court said is that if you have a dismissal for jurisdiction, for jurisdictional purposes, it is conclusive as to the jurisdictional issues, but it is not conclusive as to the underlying claims. Where's her client supposed to go to litigate these claims? Her client can come to Texas or sue in any other jurisdiction in which there's personal jurisdiction over Innovation First, Innovation First Labs or Innovation First International. The court, Judge Klausner, found that there was not sufficient pleadings for a prima facie case of personal jurisdiction, either general or specific, that had been made against those entities. Even the contact with customers? Well, the contact with customers, Your Honor, actually is a very important point, because it all occurred outside of California. MGA failed to identify even a single customer, even one, in California, that had allowed them to come to Texas. And that's where they've allegedly been contacted. Target is in Minnesota. Radio Shack is in Texas. They have no stores in California? The contact, their headquarters is in Minnesota. The headquarters of Radio Shack is in Texas. The headquarters of Toys R Us is in New Jersey. There was no specific allegation. I think if we watch the movie Guilt Trip, we know where all of those are. Go ahead. Well, Your Honor, you had asked about also about the issues that Judge Klausner had considered in issuing his order, as opposed to the issues that were presented to Judge Marshall. Your Honor, the same core issues were at issue in both cases. And actually, a comparison of the complaint filed in Judge Klausner's court to the complaint filed in Judge Marshall's court reveals often a word-for-word and certainly theme-for-theme pairings throughout. And it's no wonder, Your Honor, because MGA actually candidly admits, acknowledges in opposition to Apley's motion to dismiss the present action in Judge Marshall's court, that, quote, the present action was filed to reinstitute the claims of the first case here. In your research, did you come across Judge Bybee's recent decision in Washington Shoe? Your Honor, that does not sound familiar now. I'm going to take a look at that. Washington Shoe. So after Judge Klausner dismissed the case without prejudice, did MGA seek to amend its complaint and to pursue that? Or is there any other evidence that nothing happened and that Judge Klausner closed the case? In fact, yes, Your Honor. What the evidence shows is that MGA actually considered, specifically considered filing a motion for reconsideration with Judge Klausner. They indicated in their opening brief to this court and also stated in the complaint they filed with Judge Marshall that they were preparing an amended complaint to file with Judge Klausner, but then for whatever reason chose not to. And as a result of that decision, instead of going back to Judge Klausner and saying, I have new evidence, I want to present new arguments, they let that judgment become final. So don't we have case law? I'm pretty sure we do, that says that a case is a – operates as a final judgment, as a practical matter, when for all intents and purposes there's no further action. The judge closes it and treats it like a final judgment. Well, that was certainly – I know we have case law now. And I do not doubt that, Your Honor. It's not cited to us. That was certainly the result in the Gupta case, certainly the result in the Kendall case. It was the result in the American Surety Company v. Baldwin case from the United States in 1942, when a party has an opportunity to present jurisdictional issues and for whatever reason doesn't present all of the arguments or all of the claims that they could have, and the dismissal, a dismissal on jurisdictional grounds occurs, the case law is very clear that the party does not get a do-over. That's the exact words that this Court used in the Gupta case. There is no do-over. And that's what MGA was seeking from Judge Marshall. But, Your Honors, even if there was some new evidence that came in, for example, the IP defenders, the existence of IP defenders. That's post-Klausner? Sort of. Your Honors, they actually, MGA actually learned of the existence of IP defenders and the Texas lawsuit, the press release that they complain about was issued while there was still time to have either sought reconsideration from Judge Klausner or to have appealed his order, and they chose specifically to do neither. Sounds like the answer to my question is that it's post-Klausner. It's post the decision. You're saying it's post-Klausner, but they could have done something about it, but in any event, it's post-Klausner. Yes, Your Honor. It's a yes, but. Yes, it's post his decision, but while they still had time to have done something about it, and they chose specifically not to. Your Honor, even if it is new evidence, even if the existence of IP defenders is new evidence, Judge Marshall still got it right, because the allegation is that IP defenders was a wholly owned subsidiary of either Innovation First Inc., Innovation First Labs, or Innovation First International, and MGA never distinguishes between those three companies. But it's well settled that the mere existence of a parent-subsidiary relationship does not establish personal jurisdiction over the parent based solely on the form context of the sub. Trying to get around that, MGA attempts to invoke an exception to that rule, which applies if a subsidiary is in fact the alter ego of the parent. But in response to MGA's alter ego arguments, Judge Marshall correctly found that the record before her failed to establish a prima facie case for applying the alter ego doctrine with respect to IP defenders. A review of that record, Your Honors, I would suggest supports and confirms Judge Marshall's ruling. What was the purpose of forming IP defenders? IP defenders, the specific purpose of it does not appear in the record, Your Honor. It is alleged that the purpose was to defeat the diversity jurisdiction in Texas. Defeat federal jurisdiction over Innovation First. Well, as to the Texas state law claims that were alleged in the Texas State Court originally and then removed to federal court. So, Your Honors, as I was saying, MGA makes only conclusory allegations in the complaint that an alter ego relationship exists, reciting the very elements of the alter ego doctrine without identifying specific superior facts. So let's go back to IP defenders again. So all IP defenders is is like a shell corporation to hold certain claims that are actually held by innovation for purposes of defeating jurisdiction? Your Honor, that is what is alleged. Well, what is true? And what's your response to that allegation? My response to that allegation is that the, again, in the record, if you look at the incorporation documents of IP defenders, this is not a specific purpose corporation. It does not say in those incorporation documents that IP defenders' only job, the only thing it could do would be to hold the state law claims of Innovation First. What it says is that it's organized to conduct any lawful business that a corporation can do. Now, all that's shown in the record is that IP defenders was assigned the specific state law claims that it brought in the Texas litigation. But the record does support the fact that IP defenders could do more. Well, does it do more? Not to my knowledge, Your Honor. But what is also clear in the record, Your Honor, is that there is an allegation – there was an allegation made by MGA that there was a unity of interests between Innovation First, Inc., Innovation First Labs, and Innovation First International, and IP defenders. But that allegation was controverted by a specific affidavit that says actually that IP defenders has no involvement. There were four things that were alleged that they had a unity of interest in. Those four things specifically were in regard to design, production, marketing, and enforcement of intellectual property rights in Hexbug Nanoproducts. The affidavit that was submitted by the defendants to Judge Marshall refuted those allegations with respect to the design, production, and marketing of the Hexbug Nano. There was a single shared interest as a result of the contractual assignment, the contractual relationship between Innovation First and IP defenders. And that single interest was reflected in the Texas lawsuit and the press release that came out as a result of the Texas lawsuit. But it is only that single interest and not a unity of all interests between these companies. So if a judgment has been entered in Texas on the very claims that are at issue on this complaint, which was dismissed for lack of jurisdiction, isn't that res judicata? I mean, it's in favor of MGA, MGA won. Why do we have this? Isn't this moot, this whole thing? It's a good question, Your Honor. And, you know, I don't think that it's the result of the correct me if I'm wrong. The result, as you've told us, of the Texas litigation in Federal court was dismissal because IP defenders lacked standing to bring the action, correct? Correct. And that was not appealed, Your Honor? It was not appealed. Because it had nothing to do with the merits of the claim that MGA is seeking to resolve now. That is correct, Your Honor. So it would have no res judicata effect on this case? It should have no res judicata effect on this case. But would so that was dismissed for standing, but MGA didn't file any counterclaims in that case? No, Your Honor. You would think they would have filed their, the claims they're trying to assert in this case as counterclaims in that case. Well, that was actually one of the arguments that we had initially raised, is that they were compulsory counterclaims in that case. The court, however, didn't rule on that in Texas, didn't get to the issue, because it is, again, decided that IP defenders did not have a unity of interest with Innovation First, Inc. It had only the small, singular, contractual interest that was given to it by the assignment, and therefore did not have standing to pursue what the court had interpreted to be federal copyright claims. Rights belonging to Innovation. Correct. Okay. So, Your Honor. We're over your time, sir.  Do you have any other questions? No. No more questions. Thank you, Your Honor. Thank you very much, counsel. If I could, I would just like to clear up what may be a misconception, that MGA did nothing when it came to the Klausner decision. That's not true. While MGA was considering amending it, considering what its options were, that is when IP defenders filed its lawsuit in Texas, and MGA did try to get the Texas lawsuit brought back to California. And the argument is that, look, we have a lawsuit. We need to be in California. This is where this needs to be. Unfortunately, we did not prevail in Texas. So it's not like MGA did nothing and sat silent. MGA made its best efforts. You did nothing. You didn't prevail on your efforts to transfer the case. No, we did not. So we were stuck in Texas. And, frankly, to try to do both Texas and California at the same time, apparently did not seem to be prudent to the lawyers for MGA at the time. And I cannot at this point disagree with their approach. You asked whether or not here in California to the Ninth Circuit there is a case that talks about whether or not dismissal can be a final adjudication. I believe you are referring to the Kendall case in which it did say that at a State court decision was considered to be a final adjudication and thus did have a preclusion effect on this Court. The difference between the Kendall case and here is that was a final adjudication at the State court level. Then they tried to come back up here and redo the issue. We did not have a final adjudication with Judge Klosner. We didn't get a chance to have a final adjudication with Judge Klosner. We had to go to Texas and fight our battle in Texas. And then this case was filed in an effort to try again. And, yes, it was an effort to try again. And as I said, you know, we do believe that we made a better effort and that we have, if you look at the totality of the complaint, set forth the allegations that show that we do need to be here in the Ninth Circuit or we need to be here in California. Thank you. All right. Thank you, Counsel. MGA Entertainment v. Innovation First will be submitted.
judges: Goodwin, Hawkins, Wardlaw